**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | |
|---|---|
| United States of America,     ) | |
| ) | Criminal Action No. 0:15-cr-00666-JMC |
| Plaintiff,     ) | |
| ) | |
| v.     ) | **ORDER AND OPINION** |
| ) | |
| Howard James Holland, Jr.,     ) | |
| ) | |
| Defendant.     ) | |
| _____) | |

Defendant Howard James Holland, Jr. ("Defendant") moves to suppress statements he made during a May 19, 2015 interrogation by law enforcement officials. (ECF No. 43.) For the reasons explained below, this court **GRANTS** Defendant's Motion to Suppress (ECF No. 43).

## I. RELEVANT FACTUAL BACKGROUND

Defendant appeared at the York County Sheriff's Office for his quarterly sex offender registration on May 19, 2015. While Defendant was completing his registration, the FBI was executing a search warrant at Defendant's home based upon information it had gathered in a child pornography investigation. The FBI coordinated the search warrant to coincide with Defendant's sex offender registration at the sheriff's office.

After Defendant completed his quarterly sex offender registration with Detective Mark Motz, FBI Special Agent Allen Sosebee informed Defendant that he could not return to his home until they had executed the search warrant. Special Agent Sosebee and Detective Bob Hamilton approached Defendant and Detective Motz and asked to speak with Defendant. After Defendant agreed to do so, Special Agent Sosebee and Detective Hamilton escorted Defendant to a closed conference room in the criminal investigations area of the sheriff's office, where Detective Motz also joined them.

1

Special Agent Sosebee advised Defendant of his constitutional rights and presented him with a "waiver of rights" form that Special Agent Sosebee and Detective Hamilton had already signed, though neither of them had yet witnessed Defendant sign the form. That form delineated Defendants' rights and further included a waiver, which states: "I am willing to answer questions without a lawyer present." (ECF No. 47-1.) Defendant explicitly declined to sign the form, after which Special Agent Sosebee continued to ask Defendant questions.

Near this time, and shortly after he refused to sign the form, Special Agent Sosebee testified that he asked Defendant if the search warrant being executed at that time would uncover images of child pornography, to which Defendant answered in the affirmative. Defendant then asked for permission to take a smoke break outside, to which law enforcement officials escorted him. Almost thirty minutes after the law enforcement officials first presented Defendant with the waiver of rights form, Defendant returned from his smoke break. Defendant testified that upon his return, the law enforcement officials encouraged him to sign the form. Defendant ultimately signed the waiver of rights form.

The interrogation of Defendant continued thereafter for several more hours with intermittent breaks, all of which included law enforcement official escorts. During the interrogation, Defendant detailed his involvement in child pornography. Detective Hamilton testified that he took notes during the entire interview; the information contained in these notes was to correspond to the FD-302[1] that Defendant was provided. The law enforcement officials did not record the interrogation. Eventually, Defendant was arrested for sex offender registry violations and an assault-related offense. The interrogation did not continue after Defendant was arrested.

---

[1] FBI agents generally use FD-302 forms to summarize interviews. An FD-302 form usually contains information gleaned from notes a law enforcement official takes during the interview.

The court considers below Defendant's Motion to Suppress all of the statements he made during the interrogation.

## II. ANALYSIS

*A. Legal Standard*

When a defendant in custody asserts his right to counsel, he cannot be interrogated outside counsel's presence "unless the accused himself initiates further communication, exchanges or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981); *United States v. Johnson*, 400 F.3d 187, 194–97 (4th Cir. 2005). To determine whether law enforcement officials have obtained a statement in violation of *Edwards*, a court must first "determine whether the accused actually invoked his right to counsel." *Smith v. Illinois*, 469 U.S. 91, 95 (1984). If a defendant did invoke his right to counsel, the court must next determine who initiated the further discussions that yielded the eventual statement to be suppressed. *See id.* If an accused, after invoking is right to counsel, did not "initiate[] further discussions with the police" or "knowingly and intelligently waive [] the right he had invoked," any statement procured by the police is inadmissible at trial. *Id.* Only after a defendant is in custody is his right to presence of counsel triggered. *See Davis v. Allsbrooks*, 778 F.2d 168, 170–71 (4th Cir. 1985).

The Government bears the burden of proof to overcome a motion to suppress a statement by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 169 (1986); *United States v. Robinson*, 404 F.3d 850, 860 (4th Cir. 2005). In determining whether a defendant is in custody for the purposes of right to counsel, "the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (internal quotation marks and citation

omitted).  Because it is the "compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions at the time the questioning was conducted" that implicates a right to presence of counsel, *Beckwith v. United States*, 425 U.S. 341, 346 (1976) (internal quotation marks and citation omitted), custody equates to a formal arrest or its "functional equivalent." *United States v. Parker*, 262 F.3d 415, 419 (4th Cir. 2001).

In deciding what qualifies as the functional equivalent of "custody" outside of a formal arrest, courts generally consider whether "a reasonable man in the suspect's position would have understood his situation" to be custodial. *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). More specifically, a court considers whether "under the totality of the circumstances, 'a suspect's freedom of action is curtailed to a degree associated with formal arrest.'" *Parker*, 262 F.3d at 419 (quoting *Berkemer*, 468 U.S. at 440).

   B.  *The Court's Review*

      1.  Custody

For the purposes of making relevant an invocation of a right to counsel, the court first considers whether a reasonable person in Defendant's position prior to making the statements would have understood his situation as custodial.

The Court of Appeals for the Fourth Circuit has articulated that this analysis specifically requires a consideration of whether "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *United States v. Jamison*, 509 F.3d 623, 628 (4th Cir. 2007) (internal quotation marks and citations omitted).  Courts applying this standard have looked to surrounding circumstances of the interrogation, including, for example, "the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an

4

officer, and whether there was any physical contact between the officer and the defendant." *United States v. Day*, 591 F.3d 679, 696 (4th Cir. 2010) (internal quotation marks omitted). Other courts applying the reasonable person standard have considered factors like "separation of the suspect from family or colleagues who could offer moral support" and "isolation in nonpublic questioning rooms." *United States v. Griffin*, 7 F.3d 1512, 1519 (10th Cir. 1993).

Applying the reasonable person standard to the instant case's facts, this court finds that Defendant was functionally in custody. As Defendant explains:

> [Defendant]'s interrogation took place not at his home, in his car, or on the street, but at a police station. He was isolated and alone with the officers in a closed room. He was interrogated not by one officer but by three officers. Although . . . [Defendant] was permitted leave to smoke a cigarette or go to the restroom at will, . . . he was accompanied by an officer at all times. When [Defendant] asked to smoke a cigarette, an officer led him to an exit toward the back of the police station and stood with him while he smoked. When [Defendant] asked to use the restroom, an officer walked him to the restroom and stood outside the door until he came back out. He was never left unattended. . . . [Defendant] specifically asked if he could leave and the officers told him that he could not because a warrant was being executed at his home. . . . Looking at the totality of the circumstances, there can be little doubt that [Defendant]'s interrogation was custodial.

(ECF No. 50. at 2–3.) This court agrees.

Further supporting a finding that Defendant's interrogation was custodial, testimony at a hearing on this matter indicated that at least one law enforcement officer's weapon was visible to Defendant before the commencement of the interview. That testimony also revealed that it was a law enforcement agent—not Defendant—who went to the sheriff station's parking lot during the interrogation and notified the person who had brought Defendant there that Defendant would be staying there longer than expected. Finally, while the testimony left unclear whether Defendant

ever asked if he could leave, what is also unclear is whether the law enforcement agents ever told Defendant that he was free to leave the station.[2]

Based on all of these facts, this court finds that the reasonable person in Defendant's shoes "[would] have felt he or she was not at liberty to terminate the interrogation and leave." *Jamison*, 509 F.3d at 628. Accordingly, this court concludes that Defendant was functionally in custody during the interrogation.

    2. Assertion of Right to Counsel and Reinitiation of Communication

Because this court concludes that Defendant was in custody, it must next consider whether Defendant invoked his right to counsel, and, if so, whether the law enforcement officials unlawfully reinitiated the interrogation after he invoked his right.

To determine whether Defendant invoked his right to counsel, this court considers whether Defendant took any action that "can reasonably be construed to be an expression of a desire for the assistance of an attorney." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991). This court notes that defendant's invocation of his right to counsel must be clear and unequivocal. *See Davis v. United States*, 512 U.S. 452, 459 (1994).

It is undisputed that near the beginning of the interrogation, Defendant refused to sign the form waiving his rights to presence of counsel. But Defendant claims that before refusing to sign the form, he also expressly made clear that he did not want to speak to the law enforcement officials without the presence of an attorney. The Government, however, maintains that Defendant never invoked his right to counsel at any point during the interrogation.

---

[2] Special Agent Sosebee testified that he told Defendant he was free to leave, but Special Agent Sosebee also testified that nowhere does the FD-302 indicate that he communicated such to Defendant. Detective Motz testified that he did not recall that Defendant was ever told he was free to leave, and Defendant testified that he was, in fact, never told he was free to leave.

As an initial matter, this court cannot conclude that a reasonable law enforcement agent would have thought that Defendant did not invoke his right to counsel when he initially refused to sign a form that explicitly waived his right to counsel. *See Davis*, 512 U.S. at 459 (explaining that the question is whether the suspect "articulate[d] his [or her] desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney"). Here, the form law enforcement officials presented to Defendant during the interrogation enumerates several rights, including the right to counsel. Specifically, the form details the right "to talk to a lawyer for advice before we ask you any questions" and the right "to have a lawyer with you during questioning." (ECF No. 47-1.) Both of these rights involve Defendant's access to a lawyer, and both also relate to speaking with law enforcement officials.

The form then includes a signature line, above which a statement reads: "At this time, I am willing to answer questions without a lawyer present." (*Id.*) By inviting a signature that would acknowledge Defendant's willingness to specifically waive his right to having a lawyer present at the time of the interrogation, the form implicitly elicited a response about Defendant's desire to speak with law enforcement "[a]t [that] time" despite his right to counsel. Presumably with this right in mind, Defendant clearly refused to sign the form before continuing with the interrogation, that which, again, the Government does not dispute. Because courts "should indulge every reasonable presumption against waiver of fundamental constitutional rights," *Michigan v. Jackson*, 475 U.S. 625, 633 (1986) (internal quotation marks and citation omitted), this court finds that it is not unreasonable to interpret Defendant's initial resistance to waive his right to counsel, via his signature, as an invocation of his right to counsel. *See, e.g.*, *United States v. Johnson*, 400 F.3d 187, 194–97 (4th Cir. 2005) ("[W]e are unpersuaded by the

7

Government's implicit assertion that by checking and initialing 'no' on the waiver of rights form, Johnson failed to make a clear unequivocal request for counsel because the government form itself was unclear."); *United States v. Scott*, 693 F.3d 715, 719 (6th Cir. 2012) ("[Defendant]'s written response of 'no' to the question regarding his desire to speak with police 'articulate[d] his desire to have counsel present sufficiently clearly.'" (quoting *Davis*, 512 U.S. at 459).[3])

And even if it was questionable whether Defendant's refusal to sign the waiver of rights form reasonably constitutes an invocation of his right to counsel, Defendant also testified that he *verbally* asserted his right to counsel at the beginning of the interrogation even before he refused to sign the waiver of rights form. Despite the law enforcement officials' testimony that Defendant never stated that he wanted a lawyer, this court can ascertain no reason to doubt the truth of Defendant's testimony.

Defendant claims that he verbally invoked his right to counsel before Detective Hamilton, the designated note-taker, was present. The fact that Defendant's assertion is missing from the FD-302 thus is not necessarily dispositive of anything.[4] Further, there is no video footage of Defendant's interrogation nor any other clear evidence available to corroborate a challenge to Defendant's testimony. However, as to Defendant's testimony, this court does find corroborative the uncontested fact that he explicitly refused to sign a form that waived his right to counsel, which, Defendant claims, occurred after he had already verbally invoked this right to counsel. Accepting Defendant's testimony as true, a refusal to sign such a form after such an

---

[3] Citing its agreement with the Fourth Circuit, the Court of Appeals for the Sixth Circuit explained its hesitancy to fault defendants "'for any ambiguities—intentional or otherwise—created by the Government'" in terms of forms used for defendants to waive their rights. *Scott*, 693 F.3d at 720 (quoting *Johnson*, 400 F.3d at 196 ("If there is any ambiguity about [Defendant]'s right to counsel, it is in the form itself, and not in his invocation of the right.")).

[4] Indeed, curiously, the law enforcement officials also could not recall whether Defendant's explicit refusal to sign the waiver of rights form was memorialized in the FD-302, despite one official's testimony that such a refusal is something that normally would be included.

invocation would make sense. Based on these considerations as well as the consistency of Defendant's other testimony, this court also finds credible Defendant's claim that he verbally asserted his right to counsel.

Having established that Defendant invoked his right to counsel, the court finally turns to the question of whether law enforcement officials reinitiated further communication with Defendant in violation of *Edwards v. Arizona* such that Defendant's statement should be suppressed. *See* 451 U.S. 477, 484–85 (1981); *Johnson*, 400 F.3d at 194–97. To avoid violation of the *Edwards* rule, Defendant must have freely initiated communication and not have been coerced or pressured into communicating with law enforcement officials. *See Maryland v. Shatzer*, 559 U.S. 98, 103–05 (2010) (quoting *Minnick v. Mississippi*, 498 U.S. 146, 153 (1990)).

This court finds that Defendant did not do so here. Special Agent Sosebee testified that after Defendant refused to sign the waiver of rights form, he asked Defendant whether the search warrant being conducted at his home would uncover images of child pornography, which this court deems an interrogative question. *See Rhode Island v. Innis*, 446 U.S. 291, 303 (1980) (concluding that a right to counsel comes into play when a person is in custody and interrogated and that "the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response" (emphasis in original)). After Defendant answered that question, Defendant took a smoke break and claims that after he returned, the law enforcement officials encouraged him to sign the waiver, which he apparently understood as an indication that he might be able to go home if he cooperated. Based on this testimony, the law enforcement officials reinitiated further communication with Defendant after he invoked his right to counsel.

9

## III. CONCLUSION

In sum, this court finds that Defendant was in custody, that he invoked his right to counsel, and that the law enforcement officials inappropriately reinitiated communication with Defendant for interrogative purposes after he invoked that right. For these reasons, this court **GRANTS** Defendant's Motion to Suppress (ECF No. 43) those statements Defendant made during the interrogation after he invoked his right to counsel.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

July 1, 2016
Columbia, South Carolina