**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Criminal Action No. 0:15-cr-00666-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Howard James Holland, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Before the court is the Government's Motion for Reconsideration of the Court's Order Granting Defendant's Motion to Suppress (ECF No. 65), which the court **DENIES** for the reasons that follow.

## I. RELEVANT FACTUAL BACKGROUND

While Defendant Howard James Holland, Jr. ("Defendant") was completing a quarterly sex offender registration at a local sheriff's office, the Federal Bureau of Investigation ("FBI") executed a search warrant at his home. After he had completed the registration, law enforcement officers approached Defendant, notifying him that he could not return home until the search was completed, and asked to speak with him. Defendant agreed and was escorted to a closed conference room. After being advised of his constitutional rights, Defendant was presented with a "waiver of rights" form ("waiver form"), which reads, in part, "I am willing to answer questions without a lawyer present." (ECF No. 47-1.) There is no dispute that Defendant initially refused to sign the waiver form and expressly told the officers that he would not sign the form.

After Defendant refused to sign the form, an officer asked Defendant if the search being conducted at his home would uncover images of child pornography, and Defendant replied that it would. More than thirty minutes later, after being encouraged by officers, Defendant agreed to

1

sign the waiver form. During several more hours of interrogation thereafter, Defendant made a number of incriminating statements. He was later arrested and indicted for violations under 18 U.S.C. §§ 2251(a), (e), 2252A(a)(5)(B), (b)(2). (ECF No. 29.)

Defendant filed a Motion to Suppress (ECF No. 43) statements he made during the interrogation, and a hearing on the motion was held on April 19, 2016. At the suppression hearing, one officer testified that, during the interrogation, Defendant was informed that he was free to leave, while another officer testified that he could not recall whether Defendant was told that he could leave. (*Id.* at 9-10, 13, 69.) Three officers also testified that Defendant never asked to have a lawyer present. (*Id.* at 13, 69, 77.) Defendant, however, testified that, even before he was presented with the waiver form, he had told the officers that he had "nothing to say to [them] without a lawyer present . . . ." (*Id.* at 47.) He also testified that the officers never informed him that he was free to leave. (*Id.* at 48.)

On several occasions during its cross-examination of Defendant, the Government attempted to introduce statements Defendant made during the interview that were documented in the FD-302 form[1] that was later provided to Defendant. (*Id.* at 51, 57.) Specifically, the Government sought to ask Defendant why, during the interview, he had justified his possession of child pornography during the interview. (*Id.* at 58.) When Defendant's counsel objected, the Government argued that its line of questioning was employed to impeach Defendant's credibility and that, under Fed. R. Evid. 104(d), evidence attacking Defendant's credibility was permitted. (*Id.* at 52-53.) The court understands that the Government sought to introduce evidence regarding the merits of the case, such as evidence that Defendant had, in fact, possessed child pornography.

---

[1] The FBI generally uses FD-302 forms to summarize interviews. An FD-302 form usually contains information gleaned from notes a law enforcement official takes during the interview.

(*See id.* at 53, 60-61.) At a subsequent hearing on the instant motion for reconsideration, the Government confirmed that, although its line of questioning was for the purpose of impeachment, the questions also went to the merits of the case as the court has surmised. (*See* ECF No. 65-1 at 7 (complaining that "the Government was prohibited from cross examining Defendant on his own statements made during the course of the interview, including statements made regarding the underlying offense, which the Government submits is probative of credibility").) Ultimately, the court limited the Government's cross-examination of Defendant, preventing questions regarding the FD-302 that constituted inquiries into the facts underlying the alleged offenses.

In its July 1, 2016 Order granting Defendant's motion to suppress (ECF No. 60), the court first found that Defendant had been in custody prior to making the statements he sought to suppress. In reaching this finding, the court relied almost exclusively on testimony from the suppression hearing but, for the most part, did not attribute the testimony to any particular witness. Only once in the order did the court attribute any of the testimony on which it relied to Defendant (*id.* at 6 n.2), but, reviewing the transcript of the hearing, all the other testimony on which the court relied can be attributed to the Government's witnesses, and the Government has averred that it would not challenge the testimony of its own witnesses on these points.

The court next determined that Defendant had invoked his right to counsel for two independent reasons. First, the court found that "it is not unreasonable to interpret Defendant's initial resistance to waive his right to counsel, via his signature, as an invocation of his right to counsel." (*Id.* at 7 (citing *United States v. Johnson*, 400 F.3d 187, 194–97 (4th Cir. 2005); *United States v. Scott*, 693 F.3d 715, 719 (6th Cir. 2012)).) Second, the court credited Defendant's testimony that "he *verbally* asserted his right to counsel at the beginning of the interrogation even before he refused to sign the waiver of rights form." (*Id.* at 8.)

Because the court found that Defendant was in custody and had invoked his right to counsel prior to being questioned, the court granted the motion to suppress the statements at issue. (*Id.* at 3, 10 (citing *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981)).) Thereafter, the Government filed the instant motion for reconsideration, arguing that the court erred by (1) concluding that Defendant's initial refusal to sign the waiver of rights could constitute an invocation of the right to counsel and (2) preventing the Government from impeaching Defendant's credibility by introducing evidence that went to the merits of the underlying offense charged, which undermines the court's determinations regarding whether Defendant was in custody and whether Defendant expressly invoked his right to counsel.

## II. LEGAL STANDARD

The Federal Rules of Criminal Procedure have no provisions governing motions for reconsideration. However, the rules and federal case law do recognize such motions can be proper in a criminal setting. *See* Fed. R. Crim. P. 57(b) ("A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."); *United States v. Dieter,* 429 U.S. 6, 8 (1979) ("The fact that appeals are now routed to the courts of appeals does not affect the wisdom of giving district courts the opportunity promptly to correct their own alleged errors."); *United States v. Randall,* 666 F.3d 1238, 1241 (10th Cir. 2011) ("Although the Federal Rules of Criminal Procedure do not authorize a motion for reconsideration, 'motions to reconsider in criminal prosecutions are proper.'" (quoting *United States v. Rollins,* 607 F.3d 500, 502 (7th Cir. 2010))). The court then looks to the Federal Rules of Civil Procedure for guidance. A court may alter or amend a judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure if the movant shows (1) an intervening change in the controlling law; (2) new evidence that was not previously available; or (3) a clear error of law or a manifest injustice in the court's decision.

*Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 407 (4th Cir. 2010). In general, reconsideration under Rule 59(e) "is an extraordinary remedy that should be used sparingly." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quoting Charles Alan Wright et al., 11 *Federal Practice and Procedure* § 2810.1 (3d ed. 2012)).

The Government makes no reference to the legal standard under which the court should evaluate its motion. Nonetheless, the court notes that the Government has not contended that there has been any change in law, that any new evidence has been discovered, or that suppression of Defendant's statements wrought a manifest injustice. Rather, it appears that the Government argues only that the court committed legal errors in determining that a refusal to sign a waiver could constitute a valid invocation and in preventing its line of questioning on cross-examination. Thus, the Government's contentions fall under the clear-error-of-law portion of Rule 59(e)'s third prong.

**A. Refusal to sign as invocation of right to counsel**

To determine whether a defendant invoked his right to counsel, a court considers whether the defendant took any action that "can reasonably be construed to be an expression of a desire for the assistance of an attorney." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991). Such an action must amount to a clear and unequivocal invocation, such that, under the circumstances, a reasonable police officer would understand the defendant to be requesting to speak to an attorney. *See Davis v. United States*, 512 U.S. 452, 459 (1994). The court concluded, as a legal matter, that a defendant's refusal to sign a waiver form can constitute a valid invocation of the right to counsel under certain circumstances and found, as a factual matter, that Defendant had invoked his right to counsel by unequivocally refusing to sign the waiver form presented to him by law enforcement officers.

The Government contends that the court clearly erred by ruling that a refusal to sign a waiver form can constitute an invocation of the right to counsel. In support, the Government cites to a number of cases in which defendants made affirmative statements that were internally ambiguous regarding whether the defendant wanted a lawyer present. *See Davis*, 512 U.S. at 462 ("Maybe I should talk to a lawyer."); *United States v. Zamora*, 222 F.3d 756, 765–66 (10th Cir. 2000) ("I might want to talk to an attorney); *Burket v. Angelone*, 208 F.3d 172, 198 (4th Cir. 2000) ("I think I need a lawyer."); *Mueller v. Angelone*, 181 F.3d 557, 573–74 (4th Cir. 1999) ("Do you think I need an attorney here?") *United States v. Posada–Rios*, 158 F.3d 832, 867 (5th Cir. 1998) ("I might have to get a lawyer then, huh?"); *Diaz v. Senkowski*, 76 F.3d 61, 63–65 (2d Cir. 1996) ("I think I want a lawyer . . . Do you think I need a lawyer?"); *Lord v. Duckworth*, 29 F.3d 1216, 1219–21 (7th Cir. 1994) ("I can't afford a lawyer but is there any way I can get one?"); *United States v. Hicks,* 631 F. Supp. 2d 725 (E.D.N.C. 2009) ("I don't mind talking to you, but, I mean, I don't want to waive no rights."). From these cases, which stand for the unremarkable proposition that, for purposes of invoking the right to counsel, defendants' affirmative statements must clearly and unambiguously be requests for a lawyer's involvement, the Government extrapolates a rule that mere statements of hesitation by a defendant in deciding whether to request a lawyer is insufficient to invoke the right to counsel. Because, the Government contends, Defendant's refusal to sign the waiver form was a mere hesitation in deciding whether to request counsel, he never invoked counsel. Further, as the instant motion is one for reconsideration, the court understands the Government also to argue that the court committed a clear error of law in deciding that Defendant's refusal to sign the waiver form could constitute an invocation of the right to counsel.

The court concludes that it did not clearly err. In determining that Defendant's refusal to sign the waiver form constituted invocation of his right to counsel, the court relied on the Fourth

Circuit's decision, in *United States v. Johnson*, 400 F.3d 187 (4th Cir. 2005), that "by checking and initialing 'no' on the waiver of rights form" a defendant may "make a clear unequivocal request for counsel" even if "the government form itself was unclear." 400 F.3d at 194–97. The court also relied on the Sixth Circuit's decision, in *United States v. Scott*, 693 F.3d 715 (6th Cir. 2012), that a defendant's "written response of 'no' to the question regarding his desire to speak with police articulates his desire to have counsel present sufficiently clearly." 693 F.3d at 719. These cases stand for the proposition that a defendant's conduct unambiguously refusing to waive his rights when presented with a waiver form can, in some circumstances, be sufficient to invoke his right to counsel. The Government's citation to defendants' ambiguous affirmative statements suggesting an initial hesitance to invoke their rights in no way undermines the legal propositions in *Johnson* and *Scott*, on which the court relied. Further, the Government's insistence that the court must adhere to the rule it extrapolated from the cases its cites rather than the court's interpretation of *Johnson* and *Scott* amounts to nothing more than a disagreement with the court's interpretation of relevant case law, which cannot form the basis for a motion for reconsideration. *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993). Thus, the court cannot conclude that it committed a legal error in its reliance on, and interpretation of, *Johnson* and *Scott*.

**B. Limitation on cross-examination**

The Government contends that the court committed a clear error of law by limiting its cross-examination of Defendant at the suppression hearing and, because this error prevented it from impeaching Defendant's credibility, that it undermines the court's determinations that Defendant expressly invoked his right to counsel and was in custody prior to the interview, to the extent that these determinations relied on the court's crediting Defendant's testimony. In support, the Government cites Fed. R. Evid. 104(d) and cases interpreting it.

Rule 104(d) provides that, "[b]y testifying on a preliminary question, a defendant in a criminal case does not become subject to cross-examination on other issues in the case." Fed. R. Evid. 104(d). The Government argued that, by testifying at the suppression hearing, the Defendant subjected himself to questions regarding his credibility, including questions that involved the merits of the charges against him. Although the court did not reference Rule 104(d) during the hearing, it clearly considered the Government's argument and rejected it, implicitly concluding that it could limit the Government's cross-examination when it involved the case's merits.

The Government points the court's attention to federal appellate court decisions interpreting Rule 104(d), which hold that, in a pretrial hearing in which a criminal defendant testifies, the Government may impeach the defendant because the defendant has placed his credibility at issue. *See United States v. Roberts*, 14 F.3d 502, 517 (10th Cir. 1993); *United States v. Jaswal*, 47 F.3d 539, 543 (2d Cir. 1995). The Government also points to several decisions that go further and state that the Government may impeach a defendant's credibility with questions on matters involving the underlying offense charged. *See Roberts*, 14 F.3d at 517; *United States v. Williams*, 754 F.2d 672, 676 (6th Cir. 1985); *United States v. Davis,* No. 10-20896-CR, 2011 WL 3703119 at *2 (S.D. Fla. Aug. 23, 2011); *c.f. United States v. Gomez-Diaz*, 712 F.2d 949 (5th Cir. 1983); *Jaswal*, 47 F.3d at 543.

The court agrees with the Government that the cases cited are in conflict with the court's decision to limit the Government's cross-examination when its questions implicated the merits of the charges against Defendant. However, the fact that other courts might have interpreted Rule 104(d) differently than this court did does not, alone, warrant reconsideration under the clear error prong of Rule 59(e). Generally, there is no cause to disturb a challenged decision under clear error review merely because decisions from other courts, which do not reflect the controlling law of this

8

circuit, might have reached a different conclusion. *See Johnson v. Fed. Express Corp.*, 996 F. Supp. 2d 302, 326 (M.D. Pa. 2014) (noting, for purposes of reconsideration, that, where law "remains unsettled," movant "fail[s] to establish that the court committed clear error" by not following non-controlling line of cases). The court rejects the Government's argument for this reason.

Moreover, the court concludes that granting the motion to reconsider on this basis would be futile. *See* Wright et al., *supra*, § 2810.1 (noting that Rule 59(e) motion "will be denied if it would serve no useful purpose"). Because the court has already determined that an independent basis for finding that Defendant invoked his right to counsel will not be reconsidered, the Government's challenge to the court's Rule 104(d) determination could only result in a reversal of its custody finding. Yet, even if the court were to allow the Government the utmost latitude in impeaching Defendant at a supplemental suppression hearing with the result that the court discredited all of Defendant's testimony, the court would still find that Defendant was in custody because that finding was based almost exclusively on the testimony of the Government's witnesses, and the Government does not challenge the testimony of its own witnesses. Thus, reconsideration of the court's Rule 104(d) determination is not warranted because the Government has not shown any harm caused by that determination that would be ameliorated by reconsideration of the issue. *See United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 709 F. Supp. 2d 52, 56-57 (D.D.C. 2010) (denying motion for reconsideration on ground that, because outcome would be no different if court had assessed alternative theory, movant "cannot demonstrate that any harm would accompany a denial of the motion to reconsider"); *accord Beck v. Test Masters Educ. Servs., Inc.*, 7 F. Supp. 3d 46, 48 (D.D.C. 2013) (citing *Pueschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82, 85 (D.D.C. 2009)); *United States v. Banks*, No. 13-cr-

40060-DDC, 2014 WL 6685483, at *2 (D. Kan. Nov. 26, 2014) (citing *Hoffman v. Martinez*, 92 F. App'x 628, 632 (10th Cir. 2004)); *Lindner v. Meadow Dairies, Inc.*, No. 06-00394 JMS-LEK, 2008 WL 639360, at *4 (D. Haw. Mar. 6, 2008) (citing Fed. R. Civ. P. 61); *Satterfield v. Consol Pa. Coal Co.*, No. 03-1312, 2006 WL 931682, at *1 (W.D. Pa. Apr. 11, 2006); *Brown v. Barnhart*, No. 04 Civ. 2450(SAS), 2005 WL 1423241, at *2 (S.D.N.Y June 16, 2005).

### III. CONCLUSION

For the foregoing reasons, the Government's Motion for Reconsideration of the Court's Order Granting Defendant's Motion to Suppress (ECF No. 65) is **DENIED**.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Court Judge

September 14, 2016
Columbia, South Carolina