**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Criminal Action No. 0:15-cr-00666-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Howard James Holland, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Before the court is Defendant Howard James Holland, Jr.'s ("Defendant") Motion *in Limine* to Confirm Scope of Suppression Order (ECF No. 102), which the court **GRANTS IN PART** and **DENIES IN PART** for the reasons that follow.

### I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

While Defendant was completing a quarterly sex offender registration at a local sheriff's office, the Federal Bureau of Investigation ("FBI") executed a search warrant at his home. (ECF No. 63 at 46, 48.) After he had completed the registration, law enforcement officers approached Defendant, and an interview commenced. (*Id.* at 47-48.) During the interview, Defendant informed law enforcement officers of the password to an encrypted external hard drive at the home being searched. (ECF No. 85 at 6-7.) The interviewing officers relayed the password to the FBI agents executing the search warrant, and, using the password to access the hard drive, the FBI agents discovered images of child pornography that underlie the charges against Defendant in this case.

After charges were brought, Defendant filed a Motion to Suppress Statements, asking the court "to suppress all statements made during his custodial interrogation" on the ground that, because he was in custody and had invoked his right to counsel, the officers' continued questioning thereafter without his lawyer being present was unconstitutional and any responses thereto were

1

not admissible. (ECF No. 43 at 1 (citing *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)).) He also requested that "all evidence obtained as a result of the statements made during the unconstitutional interrogation . . . be suppressed." (*Id.* (citing *Wong Sun v. United States*, 371 U.S. 471, 485-86 (1963).)

The court granted Defendant's motion to suppress. (ECF No. 60.) Because the court found that Defendant was in custody and had invoked his right to counsel prior to being questioned, the court concluded that the statements should be suppressed. (*Id.* at 3, 10 (citing *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981)).) Although the court specified that its suppression order applied to "those statements Defendant made during the interrogation after he invoked his right to counsel," the court did not explain whether evidence obtained as a result of the statements would be suppressed or, if so, which evidence would be suppressed. (*Id.* at 10.)

The Government filed a motion to reconsider the suppression order (ECF No. 65), which the court denied (ECF No. 93). In the order denying the Government's motion, the court summarized its reasons for granting the suppression motion: "Because the court found that Defendant was in custody and had invoked his right to counsel prior to being questioned, the court granted the motion to suppress the statements at issue." (*Id.* at 4 (citing *Edwards*, 451 U.S. at 484-85).) In the order, the court again made reference to Defendant's request to suppress statements made during the interrogation but made no mention of evidence obtained as a result of those statements. (*See id.* at 2-5.)

On September 23, 2016, Defendant filed the instant motion *in limine*, asking the court to confirm the scope of its suppression order. (ECF No. 102.) Defendant notes that, in his suppression motion, he requested that evidence obtained as a result of his statements be suppressed. (*Id.* at 1.) He contends that the suppression order should extend to the images of child pornography

2

discovered on his external hard drive, which officers accessed with the password offered in a statement that has been ruled inadmissible by the court's suppression order. (*Id.* at 1-2.)

In response, the Government contends that Defendant's suppression motion sought to suppress only his statements, not any physical evidence, and, thus, that the court's order suppressed only his statements. (ECF No. 103 at 1-2.) The Government also argues that Fourth Circuit precedent forecloses Defendant's argument that physical evidence obtained in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) should be suppressed as fruit of the poisonous tree. (*Id.* at 1, 4-8 (citing *United States v. Sterling*, 283 F.3d 216 (4th Cir. 2002); *United States v. Elie*, 111 F.3d 1135 (4th Cir. 1997), *abrogated by Sterling*, 283 F.3d 216).) Under this precedent, the Government argues, physical evidence obtained as the result of a statement made in violation of *Miranda* is not subject to the poisonous-tree doctrine unless the statement was otherwise involuntarily made. (*Id.* at 4-8 & n.5.) Because there is no evidence that Defendant was coerced into offering the password, the Government argues that images obtained by using the password are not subject to the suppression order. (*Id.* at 4-8.)

Defendant, in reply, contends that the Fourth Circuit precedent on which the Government relies applies to violations of *Miranda* but not to violations of *Edwards* and, because Defendant's suppression motion and the court's suppression order were grounded on an *Edwards* violation, the case law to which the Government points is inapplicable. (ECF No. 105 at 1-4.) Further, Defendant argues that his case is distinguishable because, he claims, his circumstances show that his statement was actually coerced. (*Id.*)

## II. LEGAL STANDARD AND ANALYSIS

As an initial matter, the court rejects the Government's contention that Defendant never sought to suppress the images found on the external hard drive. In his suppression motion,

3

Defendant expressly requested that "all evidence obtained as a result of the statements made during the unconstitutional interrogation . . . be suppressed." (ECF No. 43 at 1.) Defendant also cited to *Wong Sun v. United States*, 371 U.S. 471 (1962), the seminal case introducing the "fruit of the poisonous tree" metaphor. Although Defendant did not specify that he sought to suppress the images found on the external hard drive in particular, the court concludes that, because it did not rule on his request, it is proper for Defendant, in a motion *in limine*, to ask the court to define the scope of its suppression order. Accordingly, to the extent the instant motion asks the court to define the scope of its previous suppression order, the motion will be granted. Whether the scope extends as far as Defendant requests is another matter entirely and requires an overview of the poisonous-tree doctrine as it relates to *Miranda* and *Edwards* violations.

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In two decisions, the Supreme Court derived two principles from the Fifth Amendment. First in *Miranda*, the Supreme Court held that a person who is subject to "custodial interrogation" must "be warned that he has a right to remain silent, that any statement that he does make may be used as evidence against him, and that he has a right to the presence of an attorney." 384 U.S. at 444. "Failure to administer *Miranda* warnings creates a presumption of compulsion. Consequently, unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under *Miranda*." *Oregon v. Elstad*, 470 U.S. 298, 306 (1985). Second, in *Edwards*, the Supreme Court "h[e]ld that an accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484. "If the police do subsequently initiate an encounter

in the absence of counsel . . . the [accused]'s statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the . . . statements would be considered voluntary under traditional standards." *McNiel v. Wisconsin*, 501 U.S. 171, 177 (1991).

In *Elie*, the Fourth Circuit stated that "[a]lthough the Supreme Court has not specifically rejected application of the 'fruit of the poisonous tree' doctrine to physical evidence discovered as the result of a statement obtained in violation of *Miranda,* it is clear to us that the Court's reasoning in [*Michigan v. Tucker*, 417 U.S. 433 (1974)] and *Elstad* compels that result." 111 F.3d at 1141. Accordingly, the *Elie* Court "h[e]ld that *Wong Sun* and its 'fruit of the poisonous tree' analysis is inapplicable in cases involving mere departures from *Miranda.* Accordingly, derivative evidence obtained as a result of an unwarned statement that was voluntary under the Fifth Amendment is never 'fruit of the poisonous tree.'" *Id.* at 1142. In reaching this conclusion, the Fourth Circuit relied, at least in part, on the observation that "the failure to deliver *Miranda* warnings is not itself a constitutional violation" but instead a "prophylactic standard." *Id.* at 1141-42.

In *Howard v. Moore*, 131 F.3d 399 (4th Cir. 1997) (en banc), *abrogated on other grounds by Miller-El v. Dretke*, 545 U.S. 231 (2005), *as recognized in United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011), the Fourth Circuit ruled that the poisonous-tree doctrine also does not apply to *Edwards* violations. 131 F.3d at 412-15; *see also Worden v. McLemore*, 110 F. App'x 482, 485 (6th Cir. 2004) (citing *Howard* for proposition that Fourth Circuit "refused to apply the fruit of the poisonous tree doctrine to *Edwards* violations"); *Osburn v. State*, 326 S.W.3d 771, 782 & n.10 (Ark. 2009) (same). As in *Elie*, the *Howard* Court based its conclusion in part on the ground that "[a]n *Edwards* violation, like a *Miranda* violation, is not itself a constitutional violation," and "[t]he 'tainted fruits' doctrine is simply inapplicable absent a constitutional violation." 131 F.3d 413-14.

After *Elie* and *Howard* were decided, the Supreme Court, in *Dickerson v. United States*, 530 U.S. 428, 431-32 (2000) stated that *Miranda*, although long-characterized by the Supreme Court and Courts of Appeals as a prophylactic rule, is "constitutionally based." 530 U.S. at 440. The *Dickerson* decision prompted the Fourth Circuit, in *Sterling*, to reassess its holding in *Elie* that the poisonous-tree doctrine is inapplicable to *Miranda* violations, as that holding was grounded to some extent on the proposition that *Miranda* was only a prophylactic rule, a proposition that *Dickerson* appeared to undermine. In *Sterling*, the Fourth Circuit flatly rejected an argument that the poisonous-tree doctrine should apply to physical evidence obtained as a result of a *Miranda* violation. 283 F.3d at 218. The *Sterling* Court noted that *Dickerson*'s reaffirmation of *Miranda*'s progeny, including *Elstad*'s refusal to apply the poisonous-tree doctrine to the facts of that case, buttressed its conclusion that *Elie*'s "distinction between statements and derivative evidence survives *Dickerson*." *Id.* at 219. Further, *Dickerson*'s reaffirmation of *Elstad* "'recognizes the fact that unreasonable searches under the Fourth Amendment are different from unwarned interrogation under the Fifth Amendment.'" *Id.* (quoting *Dickerson*, 530 U.S. at 441). Thus, although *Dickerson* abrogated *Elie*'s observation that a *Miranda* violation was not a constitutional violation, the Fourth Circuit's "holding in *Elie* . . . survives." *Id.*

Two years after *Sterling* was decided, a divided Supreme Court held that a *Miranda* violation does not require suppression of physical fruits obtained as a result of an accused's unwarned but otherwise voluntary statements. *United States v. Patane*, 542 U.S. 630, 634 (2004) (plurality opinion) (citing *Sterling*, 283 F.3d 126). In reaching this conclusion, the Supreme Court offered reasons largely the same as those offered in *Sterling*: the Fourth Amendment from which the poisonous-tree doctrine emanates is different than the Fifth Amendment from which *Miranda*

6

is derived, and *Dickerson* did not overturn *Miranda*'s progeny, which had greatly limited the application of the doctrine. *Id.* at 639-41.

Importantly, although in *Dickserson* the Supreme Court concluded that *Miranda* was constitutionally based, it has never reached the same conclusion with respect to *Edwards*, nor does it appear that it has ever addressed the issue. Moreover, unlike *Sterling*'s reassessment of *Elie* in the wake of *Dickerson*'s treatment of *Miranda*, the Fourth Circuit has never reassessed *Howard*'s holding that the poisonous-tree doctrine does not apply to an *Edwards* violation, as neither *Dickerson* nor any subsequent Supreme Court decision touched on whether *Edwards* was constitutionally based. Thus, the court concludes that *Howard*'s holding remains binding precedent in the Fourth Circuit notwithstanding the disturbance in the Fourth Circuit's *Miranda* jurisprudence brought about by *Dickerson*. In this regard, the court notes, along with the Fourth Circuit, that "overruling by implication is not favored." *Sterling*, 283 F.3d at 219 (citing *Agostini v. Felton*, 521 U.S. 203, 237 (1997); *Columbia Union Coll. v. Clarke*, 159 F.3d 151, 158 (4th Cir. 1998)).

Furthermore, the court believes that, even if *Dickerson* provided a basis to doubt *Howard*'s vitality, the subsequent treatment of *Miranda* in *Sterling* and *Patane* would apply equally well to *Edwards*. The relationship between *Miranda* and *Edwards* is a close one, as both decisions promulgated rules designed to protect an accused's Fifth Amendment privilege against self-incrimination. *See Texas v. Cobb*, 532 U.S. 162, 175 (2001) (Kennedy, J., concurring) ("The *Miranda* rule, and the related preventative rule of *Edwards*, serve to protect a suspect's voluntary choice not to speak outside his lawyer's presence." (internal citation omitted)); *McNiel*, 501 U.S. at 178 ("The purpose of the *Miranda-Edwards* guarantee . . . is to protect . . . the suspect's desire to deal with police only through counsel . . . ." (quotation marks omitted)); *Michigan v. Harvey*,

7

494 U.S. 344, 350 (1990) (noting that "*Edwards* . . . added a second layer of protection to the *Miranda* rules"). Thus, as was the case for *Miranda*, even if *Edwards* was determined to be constitutionally based, such a determination would not *ipso facto* necessitate application of the poisonous-tree doctrine when an *Edwards* violation occurs. There is simply no reason to believe that *Wong Sun*'s exclusion of physical evidence obtained as a result of an illegal search or seizure should apply equally to an accused's statements protected by the Fifth Amendment—regardless whether the statements are protected under *Miranda* or *Edwards* and regardless whether *Miranda* or *Edwards* are constitutional rather than prophylactic decisions—when the Fifth Amendment provides its own exclusionary rule. *See Patane*, 542 U.S. at 640; *Sterling*, 283 F.3d at 219.

Having reviewed case law regarding the poisonous-tree doctrine as it relates to *Miranda* and *Edwards* violations, the court concludes that the scope of its suppression order cannot extend to the images recovered from Defendant's external hard drive. Defendant correctly argues that the suppression order was based on an *Edwards* violation, rather than a *Miranda* violation, and that the Government's reliance on *Sterling*, which held only that the poisonous-tree doctrine does not apply to *Miranda* violations, is therefore misplaced. However, the fact that *Sterling* is inapplicable here is of little aid to Defendant because, as the court has explained, *Howard*, which held that the poisonous-tree doctrine does not apply to *Edwards* violations, remains binding precedent and compels the court to conclude that the images on the external hard drive cannot be suppressed on the ground that they are the fruit of a statement obtained in violation of *Edwards*.

Defendant also contends that the images should be suppressed because they were obtained as the result of a statement that was actually coerced in direct violation of the Fifth Amendment. (ECF No. 105 at 2-4.); *see United States v. Nichols*, 438 F.3d 437, 443 (4th Cir. 2006) ("[A] absent coercive tactics by police, there is nothing inherently unreliable about otherwise voluntary

8

statements obtained in violation of *Miranda* and *Edwards*."); *Howard*, 131 F.3d at 414 ("Only if [the defendant] could show that his statement to [police] was obtained in violation of his Fifth Amendment right against compulsory self-incrimination . . . , might the 'fruit of the poisonous tree' doctrine bar admission of [the subsequently obtained evidence]."). In determining whether an accused's statement to police was voluntarily made, the existence of "'coercive police activity is a necessary predicate to the finding that a [statement] is not voluntary . . . .'" *United States v. Mitchell*, 514 F. App'x 319, 322 (4th Cir. 2013) (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)).

    Here, the court concludes that evidence of coercive conduct by the officers that would support a finding that Defendant's statement was involuntarily made is absent from the record. Defendant points only to two indicia of coercion. First, Defendant points to the fact that he believed that, by talking to the police, he might be able to go home at the end of the interview. (*See* ECF No. 105 at 2-3.) At the suppression hearing, Defendant testified that he was operating "under the assumption" that by agreeing to the officers' requests to "help[] them . . . out" that he might have a chance to go home. (ECF No. 63 at 49, 55.) Presuming that Defendant's assumption was not founded on mere speculation—a presumption not supported by any evidence on record—it amounts, at most, to evidence of an implied promise by the officers that Defendant's cooperation might have resulted in his not being arrested at the end of the interview. However, "'[t]he mere existence of . . . implied promises . . . does not automatically render a confession involuntary,'" *United States v. Umana*, 750 F.3d 320, 345 (4th Cir. 2014) (quoting *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997)), and "'[t]ruthful statements about the Defendant's predicament are not the type of coercion that threatened to render a statement involuntary,'" *Mitchell*, 514 F. App'x at 322 (brackets omitted) (quoting *Braxton*, 112 F.3d at 782). Here, the only evidence on record

9

supports a finding that, if the officers implied that Defendant's cooperation might result in his not being arrested at the end of the interview, that implication was not untrue. (*See id.* at 24-25, 84 (unrebutted testimony that no arrest warrant was drafted until the end of the interview.); *id* at 38, 40 (unrebutted testimony that officers had no plans to arrest Defendant at conclusion of interview).) Thus, the fact Defendant assumed his cooperation might lead to his going home is not the type of coercive police activity required as a predicate to finding that Defendant's statements were involuntarily made.

Second, Defendant points to the *Edwards* violation itself as coercive police conduct. (*See* ECF No. 105 at 2-3.) However, absent evidence that a statement was *otherwise* involuntary, the mere fact of an *Edwards* violation is not enough to meet the prerequisite of coercive police activity. *See Nichols*, 438 F.3d at 443-43 ("[A]bsent coercive tactics by police, there is nothing inherently unreliable about otherwise voluntary statements obtained in violation of *Miranda* and *Edwards*." (citing *Dickerson*, 530 U.S. at 433-34; *Oregon v. Hass*, 420 U.S. 714, 722-23 (1975))); *id.* (rejecting assertion of involuntariness when "there is no claim that [a defendant]'s confession— though obtained improperly after he requested counsel—was coerced or otherwise involuntary, nor could the record support such a claim"). Here, aside from the *Edwards* violation, there is no evidence that the officers' conduct was otherwise coercive or that Defendant's statement was otherwise involuntarily made. In fact, the circumstances Defendant faced in the instant case are not distinguishable in any relevant way from those faced by the defendant in *Nichols*:

> [The defendant] described his questioning, which lasted approximately four hours, as being conversational. During the interview, [the defendant] was not handcuffed or otherwise physically restrained. The door to [the defendant's] interview room was open, and he was allowed to smoke. Further, [the defendant] testified that he spoke with police because he believed it would benefit him to cooperate. During the telephone conversation with [the defendant] before his surrender, [a police officer] indicated that if [the defendant] turned himself in, it would benefit him in connection with other

> state charges. At no time, however, did [the officer] make any specific promises or inducements in exchange for [the defendant's] answering questions.

438 F.3d at 444. Like the Fourth Circuit in *Nichols*, the court finds that such circumstances did not amount to the coercive police activity that is a precondition for a finding of involuntariness.

In sum, physical evidence obtained as a result of an accused's statement made in violation of *Edwards* is not subject to the poisonous-tree doctrine unless the statement was otherwise involuntarily made. Defendant seeks to suppress physical evidence—images recovered from the external hard drive—as fruits of the poisonous tree of a statement resulting from an *Edwards* violation. Because the court finds that that the statement was not involuntarily made, suppression of the images is inappropriate, and the court will deny the instant motion to the extent it seeks to suppress the images.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion *in Limine* to Confirm Scope of Suppression Order (ECF No. 102), is **GRANTED IN PART**, to the extent Defendant requests the court define the scope of its previous suppression order, and **DENIED IN PART**, to the extent Defendant requests the scope of the previous suppression order extend to the images recovered from the external hard drive for which he provided law enforcement officers a password.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Court Judge

October 17, 2016
Columbia, South Carolina